UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIVERSIDE ALL OF US OR NONE, et al.,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>CITY OF RIVERSIDE, et al.,<br><br>　　　　　　　Defendants. | Case No. 5:23-cv-01536-SPG-SP<br><br>**ORDER GRANTING IN PART PLAINTIFFS' PRELIMINARY INJUNCTION (ECF No. 16)** |

　　　　Before the Court is Plaintiffs' application for Preliminary Injunction. ("Application") (ECF No. 16). Plaintiffs bring this motion to enjoin Defendants, the City of Riverside, its agents and employees, from seizing and immediately discarding or destroying – without adequate pre- or post-deprivation notice – the personal property of unhoused individuals living in the Santa Ana Riverbed ("SAR"), parks, and other public areas of the City. (ECF No. 10 at 2). The Court heard oral argument on the Application on October 18, 2023. Upon careful consideration of the parties' arguments, papers, declarations, and exhibits filed in support of and in opposition to the Application, the Court concludes that Plaintiffs have met their burden to show that a preliminary injunction should issue to enjoin the City from seizing and immediately discarding or destroying the personal

-1-

property of homeless individuals living in the SAR, parks, and other public areas of the city in a manner that violates its stated policies. The Court thus orders: the City may continue its abatement policies so long as it fully complies with its stated policies.

## I. BACKGROUND

Plaintiffs in this Case are four[1] unhoused individuals living in and around the SAR and Riverside All of Us or None, a grassroots organization that works on behalf of formerly incarcerated individuals. (ECF No. 1 at 6). Plaintiffs' request for injunctive relief in this case arises out of a series of ongoing events in and around the SAR. At issue is the constitutionality of the City's clean-up or abatement efforts in the SAR and surrounding areas. Plaintiffs allege – and Defendants deny – that the City, its agents and employees, have an ongoing practice of seizing and often destroying Plaintiffs' property without notice and without an adequate means of retrieving the property. According to Plaintiffs, Plaintiffs' property – e.g., tents, medications, clothes – have been seized and immediately destroyed, despite the clear letter of the City's policies. *See e.g.,* Decl. of Shawn Yost ("S. Yost") ¶¶ 4, 11-12; Decl. of Marilu Paez ("Paez") ¶¶ 4, 9 ("As a result of the June 2023 sweep, I lost almost everything I had. The City took my tent, bedding, clothing, cosmetics, cooking supplies, state ID, and my EBT card, and my phone."). Although the City's stated policy requires that notice be given at least 48 hours before an abatement effort and that personal property be stored for 90 days post-abatement (ECF No. 18-12 at 1), Plaintiffs argue that the City's general practice is to summarily destroy the property of unhoused persons without notice. (ECF No. 20 at 6). Further, they argue that, in the rare circumstances that the City moved Plaintiffs' possessions post-abatement into storage, Plaintiffs were informed that "they only had two days to recover their property[.]" (ECF No. 20 at 6); (ECF No. 10-14 at 2 (Exh. 4)) (photograph of Notice of Removal Sign stating

---

[1] On October 17, 2023, Plaintiffs submitted their First Amended Complaint. (ECF No. 30). Because this motion for preliminary injunction was briefed and argued based upon Plaintiffs' initial Complaint (ECF No. 1), the Court considers here only Plaintiffs' initial Complaint. It is noted, however, that there are now five named Plaintiffs. *See* ECF No. 30.

that "Property Will Be Disposed Of By: 8-12-2023", which was two days after the posting of Notice of Removal).

The City does not deny that, through various efforts, the City removes and, in some cases, destroys the property of unhoused persons living in the SAR. However, the City presents evidence that these practices are both legal and in the best interest of the public at large. (ECF No. 17 at 13). Of particular importance are two City programs and policies that form the bedrock of the actions at issue: the Public Safety Engagement Team Standard Operating Procedures and the Abatement of Property from The Right-of-Way/Public Property policy. (ECF Nos. 18-12, 18-11). Starting in or around May 2019, the City created and specially trained the Public Safety Engagement Team ("PSET"), a coalition between the Riverside Police Department, Riverside Fire Department, Office of Homeless Solutions, Outreach Workers, and Code Enforcement to "assist those experiencing homelessness by providing long term housing solutions, a pathway to mental health treatment, and assistance in entering substance abuse treatment programs." (ECF Nos. 17 at 13, 18-13 at 1). Among the various services offered, PSET assists the City in its mission, outlined in the Abatement of Property policy, to help remove and dispose of "items, personal belongings, trash, debris and other structures, objects or property from the public right-of-way or other publicly owned lands that the City believes may not have been *intentionally abandoned.*" (ECF No. 18-22) (emphasis in original). In accordance with the City's Abatement of Property policy, PSET staff initiate the abatement process by posting notice of the scheduled clean-up, "returning to the location at least 48 hours later [to] conduct[] a review of the condition the property is in, and [to separate] the personal property to either be stored for pick-up or disposed of to limit health and safety risks." (ECF No. 17 at 13). These health and safety risks include, but are not limited to, an increased risk of fire in the SAR, safety issues related to disease and unsanitary conditions, and drugs, weapons, and other illegal substances. *See, especially,* (ECF No. 17-11-12; Decl. Capt. White at 1-3) ("Several large fires have started within the Santa Ana River and have extended into the outlying communities causing evacuations and damage to

residential and commercial structures…. The homeless encampments within the Santa Ana River are expansive areas nestled within heavy vegetation riddle[d] with trash debris, drug needles, solar panels, and batteries, buckets of feces, and other potentially infectious materials and waste.").

The Court has been presented with dozens of exhibits and declarations from both parties, which demonstrate that there is almost no place where the parties agree on the material facts underlying the case. Indeed, the major contention of Plaintiffs is that the alleged harm is caused by the "unwritten practices" of the City, despite the City's "written procedures." (ECF No. 16 at 16-17). The City then cites its written policies as well as its own Declarations and Exhibits to rebut the claims made by Plaintiffs. For example, Defendant argues that "[t]he City's procedures [1] do not allow for the summary destruction of non-hazardous personal property; [2] require a minimum of 48 hours notice before such property can be seized; [3] only allow for the disposal of a homeless individual's personal property if those items pose a health or safety risk to the other individuals living in the riverbed areas, the city employees cleaning up the area, or [4] if the seized items pose a health or safety risk to items already stored in the storage facility." (ECF No. 17 at 7) (numbers added). Plaintiffs contest each of these statements.

Regarding the City's first stated procedure above, Plaintiffs offer evidence that during a sweep, "City employees throw….property directly into a dumpster, then remove the dumpster when they are done. They have never given…the chance to reclaim…items." (Decl. Coley at ¶ 6); (Decl. Jones at ¶ 5-6) ("The notice stated that property left behind would be taken to storage. However, no City employee ever offered to store my belongings or tag them so I could not reclaim them. Instead, I was instructed by code enforcement to take one bag of items with me. When I tried to take a bulkier item instead, the police threatened to arrest me. I packed up a few belongings and watched the City employees throw the rest of my items in a dumpster.").

Regarding the City's second stated procedure, Plaintiffs introduce evidence that many unhoused persons "have never received notice prior to a sweep." (Decl. Coley at ¶

4). If notice is given, the notice is not followed. *See, e.g.,* Decl. Jones at ¶ 4 ("The City most recently destroyed my property in late June 2023. The City had posted a notice warning of a property sweep several days beforehand, promising to be back two days after the notice was posted. However, the City's code enforcement and police officers showed up about one week later, which caught me by surprise.").

Regarding the City's third stated procedure, Plaintiffs assert that the City often summarily disposes of Plaintiffs' belongings without regard to whether they pose a health or safety risk. (Miranda Decl. ¶ 7-9) ("The Riverside Police Department and code enforcement arrived at my campsite on the sidewalk of Mesa St. around 2pm. They ordered myself and several friends to downsize by taking what we could carry away. An officer threatened to arrest me if I did not comply. I watched as City employees placed my property into garbage bags, which they then loaded into a landscaping truck….I lost my blankets, clothes, tools, hygiene supplies, headphones, and state ID."). Similarly, regarding the City's fourth stated procedure, Plaintiffs assert that when unhoused persons attempt to retrieve their belongings, City officials state that "belongings taken during sweeps frequently do not make it back to the storage facility. [They also state] that the belongings that are brought to the facility often are not tagged with [the] owner's identity." (Paez Decl. at ¶ 15).

The Court finds, however, that on at least one material issue, Plaintiffs' evidence goes unrebutted by the City. Specifically, despite the City's *stated* procedures, PSET does not always promise to store abated property for 90 days. Instead, Plaintiffs have offered evidence that there is a practice by the City of only allowing unhoused individuals two days to claim their abated property. *See* (ECF Nos. 10-24 at 2 (Exh. 4), 10-18 at 2 (Exh. 8)). Plaintiffs argue that this practice is violative of the Fourth Amendment, the Due Process Clause of the Fourteenth Amendment, and California Civil Code § 2080. Plaintiffs thus contend that the City does not comply with their stated policies, and that, based on the City's past practices, the City will fail to follow its policies and destroy their property

during future abatement efforts. Thus, Plaintiffs seek a preliminary injunction enjoining the City's alleged ongoing unconstitutional actions.

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as a matter of right." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id*. at 20. Although a plaintiff seeking a preliminary injunction must make a showing on each factor, the Ninth Circuit employs a "version of the sliding scale approach where "a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-35 (9th Cir. 2011). Under this approach, a court may issue a preliminary injunction where there are "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff….so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (internal quotation marks omitted). "When the government is a party, the last two factors (equities and public interest) merge." *E.Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1271 (9th Cir. 2020).

A preliminary injunction may only be awarded "upon a clear showing" of evidence that supports each relevant preliminary injunction factor. *Winter*, 555 U.S. at 22. "This 'clear showing' requires factual support beyond the allegations of the complaint, but the evidence need not strictly comply with the Federal Rules of Evidence." *Medcursor Inc. v. Shenzen KLM Internet Trading Co.*, 543 F. Supp. 3d 866, 870 (C.D. Cal. 2021) (quoting *CI Games S.A. v. Destination Films*, No. 16-CV-05719 SVW (JCx), 2016 WL 9185391, at *11 (C.D. Cal. Oct. 25, 2016)). However, "[t]he evidentiary standards that apply to a motion for preliminary injunction are more relaxed than those that apply to other pre-trial motions." *Moroccanoil, Inc. v. Dermorganic Labs., Inc.*, No. CV 09-4257 CBM (PAx),

2009 WL 10675634, at *4 (C.D. Cal. 2009) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). This is so because, due to the exigent nature of a preliminary injunction, a party may be unable to produce admissible evidence in support of its position. *Puricle, Inc. v. Church & Dwight Co., Inc.*, 568 F. Supp. 2d 1144, 1147 (C.D. Cal. 2008). Thus, for purposes of a preliminary injunction, a court may properly consider evidence that would otherwise be inadmissible at trial. See *Herb Reed Enters., LLC v. Fla. Enm't Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013) ("Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings." (internal citation omitted)). Moreover, "courts ha[ve] discretion to weigh evidence submitted in support of or against a motion for preliminary injunction." *Cherokee Inc. v. Wilson Sporting Goods Co.*, No. CV 15-04023 BRO EX, 2015 WL 3930041, at *3 (C.D. Cal. June 25, 2015). "However, courts routinely deny requests for preliminary injunctions 'where the parties fundamentally disagree on the facts underlying the case.'" *Teddy's Red Tacos Corp. v. Vazquez*, CV 19-03432-RSWL-AS, 2019 WL 6895983, at *3 (C.D. Cal. Oct. 10, 2019) (quoting *SPS Techs., LLC v. Briles Aerospace, Inc.*, No. CV 18-9536-MWF (ASX), 2019 WL 1974902, at *8 (C.D. Cal. Mar. 11, 2019)); see also *Marina Vape, LLC v. Nashick*, No. 16-cv-1028-JAK (JEMx), 2016 WL 9086939, at *11–12 (C.D. Cal. May 6, 2016) (denying motion for preliminary injunction where "competing evidence [is] presented by the parties").

### III.   DISCUSSION

####     A.   Likelihood of Success on the Merits

"Likelihood of success on the merits 'is the most important' *Winter* factor; if a movant fails to meet this 'threshold inquiry', the court need not consider the other factors[.]'" *Disney Enters. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (quoting *All. for the Wild Rockies*, 632 F.3d at 1134-35); see also *Baird v. Bonta,* No. 23-15016, 2023 WL 5763345, at *4 (9th Cir. Sept. 7, 2023) ("The first *Winter* factor, likelihood of success, is a threshold inquiry and is the most important factor in any motion for preliminary injunction. That holds especially true for cases where a plaintiff seeks a

preliminary injunction because of an alleged constitutional violation."). While a movant must set forth evidence to support a likelihood of success, a movant is not required "to prove his case in full at a preliminary injunction hearing." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed. 2d 175 (1981).

In deciding an application for a temporary injunction, the Court is permitted to consider the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the application. *See Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988); *Earth Island Inst. v. Nash*, No. 1:19-cv-01420-DAD-SAB, 2020 WL 1936701, at *6 (E.D. Cal. Apr. 21, 2020) ("[I]n considering a motion for a preliminary injunction, a court may consider and rely upon declarations, affidavits, and exhibits submitted by [both] parties." (citations omitted)).

Having carefully examined the Application, Opposition, and the parties' declarations and exhibits in support of and in opposition to the Application, the Court finds that Plaintiffs have shown a likelihood of success on the merits of their Fourteenth Amendment claims. Relying primarily on *Lavan v. City of Los Angeles*, 693 F.3d 1022 (9th Cir. 2012) and *Garcia v. City of Los Angeles*, 11 F.4th 1113 (9th Cir. 2021), Plaintiffs argue that they are likely to succeed on the merits because the City has a "policy and practice of seizing and immediately destroying unhoused people's property when it is located in public places." (ECF No. 10-1 at 10; *see also* ECF No. 16 at 12). By their application, Plaintiffs are thus seeking an order "prohibiting [the City] from seizing and summarily destroying homeless people's property without probable cause and constitutionally adequate pre- and post-deprivation notice." (ECF No. 10-1 at 11).

The Court begins with the City's stated policies. The Court then discusses the alleged actual practices of the City. First, although the Court holds that Plaintiffs enjoy a possessory interest in their property protected by the Fourth Amendment and any seizure and/or destruction of such property is subject to the requirements of reasonableness under the Fourth Amendment and due process under the Fourteenth Amendment, *see Lavan*, 693 F.3d at 1028-1029, the materials submitted to the Court do not demonstrate Plaintiffs are

being subjected to the same sort of facially deficient seizure policies that were at issue in *Lavan* and *Garcia*.

In *Lavan*, the City of Los Angeles had "a policy and practice of seizing and destroying homeless persons' unabandoned possessions." *Lavan*, 693 F.3d at 1025. The Ninth Circuit held that, "because homeless persons' unabandoned possessions are 'property' within the meaning of the Fourteenth Amendment, the City [of Los Angeles] must comport with the requirements of the Fourteenth Amendment's due process clause" by providing "procedural protections," including notice and the opportunity to be heard, before permanently depriving plaintiffs of their possessions. *Lavan*, 693 F.3d at 1032. In *Garcia*, a district court issued a preliminary injunction prohibiting the city of Los Angeles from seizing and destroying pursuant to a city ordinance homeless individuals' "bulky items" stored in public areas. *Garcia*, 11 F.4th at 1116. Affirming issuance of the preliminary injunction, the Ninth Circuit emphasized that the city "may not summarily destroy the unabandoned personal property of homeless individuals that is kept in public areas," but was "free to draft a lawful version of the… [p]rovision" and "explore alternative methods to respond to the needs of its housed residents while also respecting the rights of its tens of thousands of homeless residents. *Id*., at 1124.

Here, based on the submissions of the parties, it appears the policies and procedures the City uses to address property located in the SAR referenced in the Plaintiffs' Application differ in material respects from those found facially constitutionally deficient in *Lanvin* and *Garcia*. Specifically, the City has shown that the stated procedures do not allow for the summary destruction of non-hazardous personal property. To the contrary, the City's procedures require a minimum of 48 hours' notice before such property can be seized. (ECF No. 17 at 13). Further, the City has shown that the procedures allow disposal of an unhoused individual's personal property only if those items pose a health or safety risk to the other individuals living in the riverbed areas, the City employees cleaning up that area, or if the seized items pose a health or safety risk to items already stored in the storage facility. (ECF No. 17 at 15-16). Thus, Plaintiffs have not shown that the City's

1 stated procedures fail to comport with due process or are unreasonable. *See Janosko v.*
2 *City of Oakland*, No. 3:23-CV-00035-WHO, 2023 WL 3029256, at *4 (N.D. Cal. Apr. 19,
3 2023) (holding that it is reasonable, so long as substantial notice is provided, for the
4 government to seize personal property left in public if that property poses an immediate
5 health or safety risk to the public, city workers, or locals).

6 However, Plaintiffs also argue that the City's actions are constitutionally invalid in
7 practice. In other words, they assert that, even if Defendants' written policies are
8 constitutionally valid, Defendants systematically ignore official directives. Following
9 *Armstrong,* Plaintiffs argue that the alleged harms are "part of a 'pattern of officially
10 sanctioned….behavior, violative of the plaintiffs' [federal] rights." *Armstrong v. Davis*,
11 275 F.3d 849, 861 (9th Cir. 2001), citing *LaDuke v. Nelson*, 762 F.2d 1318, 1323 (9th Cir.
12 2008). Citing *Winslow v. City of Oakland* for the proposition that injunctive relief is
13 appropriate when a movant provides evidence that a city's practices of unconstitutional
14 seizure and destruction of unhoused persons' property are inconsistent with its written
15 policies, Plaintiffs argue that the same situation is unfolding in this Case. *Winslow v. City*
16 *of Oakland*, 2020 WL 1031759 (N.D. Cal. Mar. 3, 2020).²

17 As discussed above, the Fourteenth Amendment to the United States Constitution
18 states that "[n]o state shall…deprive any person of life, liberty, or property without due
19 process of law." U.S. Const. amend. XIV. Article I, section 7 of the California
20 Constitution similarly provides that a "person may not be deprived of life, liberty, or
21 property without due process of law." Importantly, the Ninth Circuit has held that,
22 "because homeless persons' unabandoned possessions are 'property' within the meaning
23 of the Fourteenth Amendment, [a city] must comport with the requirements of the
24 Fourteenth Amendment's due process clause" by providing "procedural protections,"

---

² The Court notes that in *Winslow*, the Court issued a preliminary injunction which ordered that the City of Oakland could continue cleaning and clearing the High Street encampment, "provided that it fully complies with its stated policies." *Winslow*, 2020 WL 1031759, at 3.

including notice and the opportunity to be heard, before permanently depriving plaintiffs of their possessions. *Lavan*, 693 F.3d at 1032. Since the Fourteenth Amendment's protections extend to the unabandoned property of Plaintiffs, the major question for purposes of this motion is whether Plaintiffs have made a clear showing of the likelihood of success on the merits based on their claim that, by seizing unhoused persons' possessions and leaving, in some cases, only two days to retrieve the items in violation of the stated policies, the City has violated the "procedural protections" of the Fourteenth Amendment. The answer is Yes.

Under *Mathews v. Eldridge*, a court is to consider three factors to determine whether the basic procedural due process requirements have been met: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens that additional or substitute procedural requirements would entail. *Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

The City claims that "If the Code Enforcement Officer determines that the property [of an unhoused individual] may be an item of value, whether abandoned or not, that Code Enforcement Officer is required to have the property removed and stored for 90 days at 2880 Hulen Place, Riverside, CA." (ECF No. 16 at 15). The Code Enforcement Officer is then required to post a "Notice of Removal" sign in a conspicuous place at the sight of the abatement. *Id.* Although that is the policy, Plaintiffs offer evidence that there is a practice by the City of only allowing unhoused individuals two days to claim their abated property. *See* (ECF Nos. 10-24 at 2 (Exh. 4), 10-18 at 2 (Exh. 8)). If an unhoused person is not able to claim their belongings at 2880 Hulen Place within the stated 2-day window, their possessions "will be disposed of." (ECF No. 10-24 at 2 (Exh. 4)). This photographic evidence presented by Plaintiffs has not been rebutted by the City in either its written filings or at oral argument.

Appling the *Eldridge* factors, this practice presents an "enormous risk of erroneous deprivation," which could likely be mitigated by the City's following their own stated policies. *Lavan*, 693 F.3d at 1017. Moreover, the private interest at stake – namely, that unhoused individuals will have a greater opportunity to retrieve their possessions, perhaps representing everything they own – would be clearly benefitted by the official action of allowing 90 days to retrieve their possessions. Third, although the Court notes that the City has a strong and admirable interest in affecting meaningful and effective policies that help all people living in Riverside, the order to follow the Policies does not constitute an additional burden over and above the very requirements set out in the Policies themselves. Thus, factor three weighs in favor of Plaintiffs.

Because all three *Eldridge* factors weigh in favor of Plaintiffs, Plaintiffs have satisfied the threshold factor of showing they are likely to succeed on the merits on their claim that the City's practice of allowing only two days post-abatement for unhoused individuals to re-possess their belongings is violative of the Fourteenth Amendment. *See Baird v. Bonta,* No. 23-15016, 2023 WL 5763345, at *4 (9th Cir. Sept. 7, 2023) ("The first *Winter* factor, likelihood of success, is a threshold inquiry and is the most important factor in any motion for preliminary injunction. That holds especially true for cases where a plaintiff seeks a preliminary injunction because of an alleged constitutional violation.").

### B. Irreparable Harm

Having cleared the "most important" preliminary injunction factor, *see Disney Enterprises, Inc.*, 869 F.3d at 856, Plaintiffs easily satisfy the next factor: irreparable harm. Plaintiffs filed numerous affidavits, declarations, and evidence that unhoused persons have suffered the loss of some of their most important possessions, e.g., tents, medications, and clothes. *See e.g.,* Decl. of Shawn Yost ("S. Yost") ¶¶ 4, 11-12; Decl. of Marilu Paez ("Paez") ¶¶ 4, 9 ("As a result of the June 2023 sweep, I lost almost everything I had. The City took my tent, bedding, clothing, cosmetics, cooking supplies, state ID, and my EBT card, and my phone."). Even so, these kinds of losses are not necessary to satisfy the irreparable harm standard under Ninth Circuit precedent, for "an alleged constitutional

infringement will often alone constitute irreparable harm." *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). Plaintiffs have thus satisfied the second *Winter* factor.

### C. Balance of Equities and Public Interest

Before issuing a preliminary injunction, the Court must identify the harm that an injunction might cause a defendant and weigh it against the injury threatening the Plaintiffs. *Justin v. City of Los Angeles*, No. CV0012352LGBAIJX, 2000 WL 1808426, at *11 (C.D. Cal. Dec. 5, 2000). Here, if the City continues to violate its own policies, the harms will fall almost entirely on Plaintiffs.[3] If this Court issues an injunction holding that the City may continue its abatement policies so long as it fully complies with its stated policies, this injunction will not constitute an additional burden on the City over and above what the City has set for itself. The balance of equities thus weighs in favor of Plaintiffs.

Similarly, the Court takes seriously the City's representations at oral argument that the City's Policies are carefully designed to help all residents of Riverside, not least the unhoused persons living in and around the SAR. Thus, by the City's own representations, the unhoused persons living in Riverside are just as much a part of the public and worthy of this Court's consideration. These Policies are serving the public interest and thus ought to be applied correctly. The Court simply mandates that this be the case.

## IV. CONCLUSION

For the foregoing reasons, the Court grants, in part, and denies, in part, Plaintiffs' Motion for Preliminary Injunction. Plaintiffs have met their burden to show that a preliminary injunction should issue to enjoin the City from seizing and immediately discarding or destroying the personal property of homeless individuals living in the SAR, parks, and other public areas of the city in a manner that violates its stated policies. The Court thus orders as follows:

---

[3] At oral argument, the City stated that violations of City abatement policies harm everyone in the City, especially the unhoused and the various professionals upholding the Policies, e.g., firefighters, police officers, and social services members. The Court agrees and holds that this line of argument further supports a limited preliminary injunction.

Defendant, the City of Riverside may continue its abatement efforts, but the City, its agents, and employees are enjoined from engaging in any abatement practices that are not in compliance with the City's stated policies, including the practice of requiring unhoused persons to claim in less than 90 days their items of value that have been removed to 2880 Hulen Place, Riverside, CA.

As set forth in this opinion, due to the competing evidence regarding Plaintiffs' remaining basis for seeking preliminary relief, the Court denies a preliminary injunction on Plaintiffs' remaining claims.

**IT IS SO ORDERED.**

DATED: November 14, 2023

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE